In the Matter of ALBEE FUEL CORPORATION, Petitioner, v. NORMAN F. GALLMAN et al., Constituting the State Tax Commission, et al., Respondents.

Third Department, August 2, 1973.

*Langberg & Ringel* (*Nathan Ringel* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Thomas P. Zolezzi* and *Ruth Kessler Toch* of counsel), for Norman F. Gallman, respondent.

*Norman Redlich, Corporation Counsel* (*Isaac C. Donner, Stanley Buchsbaum* and *Samuel J. Warms* of counsel), for City of New York, respondent.

GREENBLOTT, J. This is a proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme Court at Special Term, entered in Albany County), to review a determination of the State Tax Commission which sustained a mortgage recording tax imposed under section 253 of the Tax Law.

We are asked for the first time to determine whether an assignment of rents given as security constitutes a mortgage as defined in section 250 of the Tax Law, so as to be subject to a tax under section 253 upon recordation.[1] Petitioner is the owner of certain real property in Kings County which is occupied by E. J. K. Realty under a 99-year lease. In 1969, to induce First National City Bank to lend $1,650,000 to Cirillo Bros. Sales Corp. petitioner guaranteed repayment to the extent of $1,000,000 and as security for its guarantee, petitioner assigned to the lender all rents payable to it by E. J. K. Realty or successors. The assignment contained a provision by which petitioner undertook that it " shall not, without the prior written consent of First National City Bank, accept a surrender or cancellation of the above described Lease, or modify any of the terms, covenants and conditions thereof." When petitioner sought to have the assignment recorded, the Registrar of the City of New York required payment of a mortgage tax in the amount of $7,500.

---

1. In *Matter of City of New York* v. *Murphy* (36 A D 2d 658, mot. for lv. to app. den. 29 N Y 2d 482), the taxpayer did not challenge the imposition of a tax upon the recordation of an instrument labeled as an assignment of rents, but merely disputed the amount of the tax. Upon review of the record in that case, it appears that the assignment of rents was part of a larger financial package which included a separate mortgage on the same real property. The recordation increased the indebtedness to be secured, and thus the question raised concerned the amount of *additional* tax to be imposed. Here we must decide whether an assignment of rent may be treated as a mortgage.

Petitioner paid the tax under protest, and after its application to respondents for a refund was denied after a hearing, the present proceeding was instituted.

Section 250 of the Tax Law defines a mortgage for purposes of the recording tax as " every mortgage or deed of trust which imposes a lien on or affects the title to real property ". In determining whether that statute is here applicable, we must be mindful of the fact that there was no assignment of the reversion, which is normally integral to a lease. All that was assigned was a right to rents. This right, in our view, cannot be categorized as real property, for it was early stated that an assignment of rents " in no wise [affects] the title to the land nor [is] it a lien or incumbrance thereon " (*Harris* v. *Taylor*, 35 App. Div. 462, 467, app. dsmd. 159 N. Y. 533). This statement was approved in *Conley* v. *Fine* (181 App. Div. 675) where it was unequivocally stated, in direct reliance upon *Harris*, that " an assignment of rents [is] not a conveyance of, nor an incumbrance upon real property " (*Conley* v. *Fine, supra,* p. 678).

An analysis of article 9 of the Real Property Law, dealing with recording instruments, though not controlling, tends to support this view. Section 291 thereof provides for the recording of " a conveyance of real property ". " Conveyance " is defined in subdivision 3 of section 290 as " every written instrument by which an estate or *interest in real property* is created, transferred, *mortgaged or assigned, or by which the title to any real property* may be affected ". It is obvious that in the eyes of the Legislature, an assignment of rents was not an " interest in real property * * * assigned " or an instrument " by which the title to any real property may be affected ", so as to be a " conveyance " under section 291, otherwise there would have been no need for section 294-a, which provides for an assignment of rent to be recorded if " made * * * and certified in a manner to entitle a conveyance to be recorded ". The Legislature thus did not intend " mortgage " as used in the Real Property Law to include a rent assignment,[2] and we see nothing to indicate that a broader meaning was intended in the Tax Law. It must be borne in mind that there is a distinction between " mortgages " and " security interests ". The latter, of course, would be a much broader category—but it is not upon the latter which the tax in question is imposed. Not all security interests are mortgages, and a security interest does not become

2. See also section 315 of the Real Property Law, which speaks of " mortgages and securities, and assignments of rent ", thus indicating that " mortgages " and " assignments of rent " are distinct from each other.

a mortgage merely because of a tangential relationship to a parcel of real property. As we said in *Matter of Macy & Co. v. Bates* (280 App. Div. 292, 295), the Tax Commission is not permitted " to arbitrarily classify a transaction as a mortgage merely because in some of its aspects it resembles a mortgage ".

Respondents urge that the terms of the assignment did impose a lien upon and affect title to real property since petitioner could not cancel, assign or modify the lease, or accept a surrender, without the prior consent of the secured party. We disagree. The petitioner agreed to accept limitations upon his freedom of action, but in no wise was his fee ownership of the property altered in any discernible manner. Nor was a lien or incumbrance thereby imposed against petitioner's real property, for the secured party was given no remedy enforceable against the property, such as foreclosure or reversion. Thus, the lender's " veto " power over a cancellation or assignment of the lease was nothing more than a contractual device to protect the security interest given by the assignment of rents from being impaired. Were petitioner to violate the clause in question, he might be liable to the lender for a breach of contract arising from impairment of the security. Since, however, there would be no remedy by which the assignee would obtain title to the property, it cannot be said that the assignment of rents affected the title to or imposed an incumbrance upon that property.

Keeping in mind " that tax laws are, at least when ambiguous or doubtful, construed strictly against the taxing power and liberally in favor of the taxpayer ", and noting that the question of whether an instrument is a " mortgage " subject to the tax of section 253 has been held by the Court of Appeals to be one of law (*Matter of Suffolk County Féd. Sav. & Loan Assn.* v. *Bragalini*, 5 N Y 2d 579, 584, 585), we conclude that the determination of the respondents was in error.

The determination should be annulled, and the matter remitted for further proceedings not inconsistent herewith.

Herlihy, P. J. (dissenting). In our view the assignment by the petitioner of its interest in the lease as owner of the real property was necessarily more than an assignment of a right to rents. Although the assignment did not grant any specific reversion rights to the bank which could affect a right of possession at any time in the bank, nevertheless, the assignment clearly affected the petitioner's right as owner and lessor to a reversion of the property during the term of the lease. (Cf. *Thorn* v. *Sutherland*, 123 N. Y. 236.) The assignment in this case does affect the title to the real property as it permits the

bank to control any possible reversion of the right of possession to the petitioner as owner of the premises. The right of posses-. sion is clearly a necessary incident of legal title to real property and to the extent that the lease precludes possession by an owner, a lease necessarily affects interests in real property. The assignment herein affects the petitioner's reversionary interests by precluding petitioner's right to possession unless the bank should so consent and thus it affects the retained title of the petitioner as owner and lessor. It is undisputed that the assignment was given as security for a loan and it is certainly dependent upon real property interests as opposed to being a pure chose in action related to the collection of rents.

As noted in *Matter of Atlantic Cement Co.* v. *Murphy* (30 A D 2d 456, 458, affd. 28 N Y 2d 502): "The courts no longer permit an instrument, which is in actuality a means of giving security for a loan, to be considered anything but a mortgage." Although the instrument involved in the *Atlantic Cement* case was on its face a deed absolute, the premise relied upon by the court is just as applicable here. In this case the petitioner did not directly assign any possessory interests in the real property which would permit the bank to enter upon the premises either during the lifetime of the lease or subsequent thereto which distinguishes the present case from *Matter of City of New York* v. *Murphy* (36 A D 2d 658, mot. for lv. to app. den. 29 N Y 2d 482) wherein the debtor assigned both the rights under a current lease and the right to rents under a sublease. However, since the assignment herein can be utilized by the bank to preclude possessory interests by the petitioner during the life of the lease and thus by virtue of the assignment the bank can control possession of the premises insofar as the petitioner is concerned, the situation would be distinguishable from *Matter of City of New York* v. *Murphy* (*supra*) in terminology only.

Upon the present record the Tax Commission's determination has a reasonable basis in law and it should be confirmed, without costs.

KANE and MAIN, JJ., concur with GREENBLOTT, J.; HERLIHY, P. J., and SWEENEY, J., dissent and vote to confirm in an opinion by HERLIHY, P. J.

Determination annulled, and matter remitted for further proceedings not inconsistent herewith, without costs.